961 So.2d 1183 (2007)
Rickey P. ADAMS
v.
DEPENDABLE SOURCE CORPORATION.
No. 2006 CA 1331.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*1184 Henri Michel Saunders, Baton Rouge, Counsel for Appellee Rickey P. Adams.
Denis Paul Juge, Metairie, Counsel for Appellant Dependable Source Corporation.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
*1185 DOWNING, J.
This is an appeal of a judgment rendered by the Office of Workers' Compensation (OWC) that awarded Rickey P. Adams (Adams) benefits, medical expenses, penalties, and attorney fees. For the following reasons, we affirm the OWC judgment.
Dependable Source Corporation and its insurer, The Gray Insurance Company (Dependable), appeal the judgment and allege that the trial court erred as follows:
1) In calculating the average weekly wage based on a four-week period rather than a twenty-six week period.
2) In awarding Supplemental Earnings Benefits (SEB) from July 14, 2004 and only crediting wages earned and not crediting the 40 hours of work offered but not worked by Adams.
3) In failing to give the employer credit for Adams' light duty earning capacity after employment was terminated October 17, 2004.
4) In ordering that SEB is to be paid by the defendants "until further order of this Court."
5) In finding that the employer failed to timely initiate SEB and awarding $2,000 in penalties.
6) In finding that the SEB payments made by the defendants were incorrect and in assessing them $2,000 in penalties.
7) In awarding attorney fees of $8,000.

FACTS AND PROCEDURAL HISTORY
Adams was a truck driver who was seriously injured[1] while driving for Dependable, a company providing businesses with drivers. Adams was released for "light-duty" about six weeks after the accident. Dependable subsequently created a position for him entitled "greeter," which apparently had no duties but required him to spend the day in the office. The job paid $9.00/hour, and Adams could potentially work forty-hours a week. Adams "greeted" for about fourteen weeks until he was terminated[2] for sending an inappropriate e-mail from his home computer to a female co-worker's private computer.[3]
Adams filed a Disputed Claim for Compensation alleging that prior to the accident he was earning $936.66/week. He also alleged that his employer was paying him to perform meaningless light duty work and was not paying SEB benefits. Dependable's answer denied that Adams was disabled as a result of a work-related injury, was able to earn a substantial wage, and was not entitled to benefits. It also claimed to be entitled to offset any compensation paid Adams since the alleged accident. Dependable also claimed to be entitled to offset all medical expenses paid by a third party without authorization and pre-approval.
At trial the OWC found in favor of Adams. It calculated Adams' average *1186 weekly wage by using his check stubs for the four weeks preceding the accident.[4] It further ruled that Adams was entitled to total temporary indemnity benefits (TTD) in the amount of $429/week from May 21, 2004, the date of the accident, until July 14, 2004, the date he was released for "light duty" employment. It also ruled that Adams was to be paid SEB in the amount of $429/week from the date he returned to "light duty" through the present, ongoing "until further orders of this court."
The OWC agreed that Dependable was entitled to a credit for any wages it paid during Adams return to the "light duty" position, but denied any credit after the termination date, October 17, 2004, through the present. The OWC ordered Dependable to pay all accident-related medical expenses, including an emergency room visit and treatment with Dr. Tom Rathmann.
The OWC assessed a $2,000 penalty for the arbitrary and capricious failure to timely initiate Adams' SEB. It also assessed another $2,000 penalty for failing to pay the proper SEB rate when benefits were finally instated. It further assessed another $2,000 penalty for Dependable's failure to pay an emergency room bill. This breach triggered an attorney fee award in the amount of $8,000.
Adams answered the appeal seeking additional attorney fees for expenses incurred in having to respond to this appeal.

DISCUSSION

Standard Of Review
The appellate review of factual findings is governed by the manifest error standard consisting of the following two-part test: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. (Citation omitted). A factual finding cannot be set aside unless the court finds that it is manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Calculating the Average Weekly Wage
Dependable argues in its first assignment of error that the OWC used an incorrect formula to calculate Adams' weekly wage. It contends that the calculation depends on how the employee's wages were determined at the time of the injury. In this case, it argues that Adams was not always paid an hourly rate and could accept or reject any assignment; therefore, his average weekly wage should not have been limited to an average of four checks prior to his accident. It argues that some jobs Adams worked were paid hourly, some paid mileage only, and others paid a combination of hourly, mileage, and delay time. At the time of the accident, Adams was driving for Ryder Trucks and being paid $12.50/hour for delay time, $5.00/stop, and .27 cents/mile.
Dependable argues that La. R.S. 23:1021(10)(d) provides the correct method for calculating benefits for employees paid in unit, piecework, commission, or other basis. It argues that pursuant to the statute, his wages should have been calculated on a twenty-six week period, and multiplied by the average number of days he worked per week. In using this formula, it argues, Adams average weekly wage should have been $335.06, less then than *1187 the wage based on the $9.00/hour it was paying him.
The OWC disagreed. It commented on numerous discrepancies between Adams' checks and payroll records. In oral reasons, the OWC said that the fairest way to handle this pay confusion was to just use the amount on the check stubs for the gross taxable earnings for four weeks prior to the accident. The OWC found that Adams was essentially classified as an hourly employee although his earnings were based upon several variables.
Our review of Adams' payroll checks indicate he was paid by the hour and that Dependable admitted this to be true. While the payroll information was broken down into several categories, including mileage, per diem, hourly wage, and stop-delay time, the total was then converted to an hourly figure. The record also reflects Dependable originally figured Adams' average weekly wage using a four-week calculation of $429/week. At some point, the calculation was adjusted to reflect his 26-week average. The record reflects that neither the OWC nor Dependable personnel could determine the accuracy of the amounts. Considering the record, evidence, and testimony, we conclude that the OWC had a reasonable basis to make its calculation as it did and this assignment of error is without merit.

Supplemental Earnings Benefits from July 14, 2004  Present
Dependable contends that Adams was not entitled to receive SEB because he never demonstrated that he could not earn 90% of his pre-injury wages. It argues that the statute does not allow a claimant to choose not to work when work is available. It claims that Adams was given a job earning $9.00/hour, and could have generated $360/week, which was more than his average weekly wage based upon a twenty-six week calculation. Thus, no SEB should have been owed.
In the second part of this assignment of error, Dependable alleges that the OWC failed to consider that Adams seldom worked a forty-hour week and only gave them credit for his actual earnings. Dependable cites no law to support this argument.
An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). The SEB statute does not permit a claimant to choose not to work and still collect SEB when he is physically able to work and suitable jobs are available. Blanchard v. Federal Exp. Corp., 95-0349, p. 4 (La.App. 1 Cir. 11/9/95), 665 So.2d 11, 13. However, a "suitable job" is one that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age experience, and education. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 11 (La.7/1/97), 696 So.2d 551, 557.
Here, Adams was an eighteen-wheel truck driver. Dependable director, Rodney Mabile, testified that his insurer told him that it would be beneficial to everybody to create a position for Adams and to keep him in this position as long as he had to. The "greeter" position was created entailing no duties whatsoever. The record reflects that Adams was told not to answer the phone and that most days he sat around playing solitaire or reclining on the floor until someone came in for him to greet. Mr. Mabile testified that many days nobody entered the office to be greeted.
Further, the medical exhibits reflect that the OWC had sufficient evidence from which to conclude that Adams' earning *1188 capacity was severely curtailed and that he was not engaged in suitable employment. Accordingly, we conclude that the OWC did not err in awarding SEB to Adams because he was not employed in a suitable job.
We also conclude that the OWC had ample evidence to find that Adams' medical condition precluded him working all the potential hours allowed. Accordingly, the OWC did not err in only allowing Dependable a credit for the actual wages it paid Adams during his tenure as their "greeter." The second assignment of error is without merit.

Failure To Give Credit After Termination
In its next assignment of error, Dependable asserts that the OWC erred in not allowing it a credit for Adams' "earning capacity" even though he had been terminated. It contends that Adams had worked earning $9.00/hour, and therefore had a $9.00/hour earning capacity.
The OWC found that Adams had a problem working forty hours due to complications with his injuries. Adams testified that his spinal problems caused him pain when sitting for long periods of time. The OWC also found that Adams was essentially terminated for very little cause. As discussed above, Adams was a truck driver trying to fit into an office setting. He was never given a policy handbook nor told about office protocol.
When the OWC ruled that no credit would be given for Adams' earning capacity after the date of his termination, he did not state his reasoning. However, when an employee is not working or is earning less than he is able to earn because of a job-related disability, it is the employer's burden to establish his earning capacity. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 56 (La.1993). Obviously, the OWC concluded that the $9.00/hour "greeter" job was not an accurate indication of Adams' true earning capacity. We conclude that this ruling was reasonable under the circumstances. The third assignment of error is without merit.

An Indefinite Order to Pay Supplemental Earnings Benefits
In Dependable's fourth assignment of error, it argues that the OWC erred in awarding Adams' SEB until further order by the court. Dependable contends that § 23:1310.8 C, which provides that this section shall not apply to SEB calculations, specifically prohibits modification. It argues that this exclusion is specifically established in La. R.S. 23:1221(3).
We disagree. Dependable misstates the statute. The very terms of the Workers' Compensation Act contemplates SEB modification. An injured employee's release for full-time work, his being declared totally and permanently disabled, or his death, would all require modification. Accordingly, we interpret the "until further orders by the court" language to represent the court's reasonable case management strategy. La. R.S. 23:1221(3), does not preclude such language. Accordingly, this assignment of error is without merit.

Penalties
In its fifth and sixth assignments of error Dependable argues that the OWC erred in finding that it did not timely initiate SEB and is erroneously calculating the amount of the benefit, thereby triggering the penalty statute. It argues that had the OWC applied the correct calculation, no SEB would be owed since the "greeter" job could have earned more wages than Adams was earning before his accident.
Penalties are awarded pursuant to La. R.S. 23:1201. The first $2,000 penalty was awarded based upon Dependable's failure *1189 to timely initiate SEB. The second $2,000 penalty was triggered when Dependable miscalculated the amount of SEB due Adams.[5] We have upheld the OWC determination of Adams' right to and calculation of the SEB benefit. Accordingly, these assignments are without merit.

Attorney Fees
In Dependable's seventh assignment of error, it argues that the court erred in awarding $8,000 in attorney fees. Dependable points out that the amount is unfair because the penalty was due to an oversight resulting in its failure to pay a medical bill.
Louisiana Revised Statute 23:1201 F provides for an attorney fee award for failing to pay medical bills within the time prescribed pursuant to 23:1201. The amount of the award is to be reviewed using the "abuse of discretion" standard. Lane Memorial Hosp. v. Gay, 03-0701, p. 7 (La.App. 1 Cir. 2/23/04), 873 So.2d 682, 686. In this case, the OWC had ample opportunity to observe the preparedness of Adams' attorney. The hearing was relatively lengthy, and Adams' attorney obviously was well prepared. The exhibits are voluminous and well documented. Adams' attorney filed pleadings, exhibits, and a memorandum of law. The OWC could, through experience, reasonably judge the amount of time necessary to present the case and the value of that time. We conclude that the award is supported by the record, and the OWC did not abuse its discretion in determining the amount awarded in attorney fees. Therefore, the award shall remain undisturbed. This assignment of error is without merit.

ANSWER TO APPEAL
Pursuant to LSA-C.C.P. article 2133, Adams answered the appeal and sought additional attorney fees. Workers' Compensation claimants are entitled to increased attorney fees to reflect additional time and effort spent in defending an employer's unsuccessful appeal. Leonard v. James Indus. Constructors, 03-0040, p. 10 (La.App. 1 Cir. 5/14/04), 879 So.2d 724, 731. We find Adams' request for attorney fees to be supported by the law and the record. Therefore, we conclude that Adams is entitled to collect attorney fees in the amount of $2,500 for the defense of this proceeding.

DECREE
For the above reasons assigned herein the judgment of the OWC is affirmed. Judgment is further rendered in favor of Rickey P. Adams for additional attorney fees in the amount of $2,500. Costs are assessed to Dependable Source Corporation and its insurer, The Gray Insurance Company.
AFFIRMED.
NOTES
[1] Adams' truck was traveling westbound on I-10 when a flatbed trailer dislodged from a vehicle traveling eastbound, crossed the median, and struck him. Adams' vehicle hit an exit sign, jack-knifed, and ran off the roadway. He fractured four cervical disks when his head hit the cab of the truck.
[2] The validity of this termination is not at issue; it has not been raised as an assignment of error.
[3] The record is unclear regarding the location of the private computer or how Dependable found out about the e-mail that involved a joke about President Bush. The co-worker did not testify, but Adams testified that she thought it was funny and forwarded it on to her husband.
[4] The itemized amounts are May 16, ($525.75), May 9, ($981.40), May 2, ($805.96), April 25, ($643.03). This results in an average weekly wage of $724.03, resulting in a weekly compensation of $429/week.
[5] A third $2,000 penalty was imposed due to Dependable's failure to pay a certain medical bill, but this penalty was not appealed.