STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1343

KIM WILLIAMS

VERSUS

AVERITT EXPRESS, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION,
PARISH OF RAPIDES DISTRICT 02, NO. 03-07742
HONORABLE JAMES L. BRADDOCK, WORKERS' COMPENSATION
JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED AS AMENDED.**

**Kirk L. Landry**
**Keogh, Cox & Wilson, Ltd.**
**701 Main Street**
**Baton Rouge, LA 70821**
**Counsel for Defendant-Appellant:**
    **Averitt Express, Inc.**

**Louis Wellan, Attorney at Law**
**1740 Jackson Street**
**Alexandria, LA 71301**
**Counsel for Plaintiff-Appellee:**
    **Kim Williams**

**PAINTER, Judge.**

Defendant, Averitt Express, Inc., appeals the workers' compensation judge's ruling in favor of Kim Williams. The WCJ found that Williams met his burden of proving a work-related injury, that he was entitled to Supplemental Earnings Benefits (SEB), and that he had not violated the provisions of La.R.S. 23:1208. The WCJ awarded SEB from the date of termination including interest as well as indemnity and medical benefits from the time Defendant claimed a violation of La.R.S. 23:1208. The WCJ also found that Defendant was arbitrary and capricious in its termination of benefits and awarded $2,000.00 in penalties and $6,500.00 in attorney's fees. For the following reasons, we affirm as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2003, Williams was employed by Defendant as a truck driver. Williams contends that on April 29, 2003, while in the course and scope of his employment, he injured his cervical spine while attempting to hook/unhook a trailer in Defendant's work yard in Shreveport, Louisiana. Williams finished his work for the day and reported the injury to his supervisor the same day. His supervisor sent him to Louisiana Occupational Health Services at that time. Williams saw Dr. Gordon Webb on April 29, 2003. Dr. Webb returned Williams to "regular duty." Williams continued to treat with Dr. Webb until May 15, 2003, when Dr. Webb referred him to Dr. Lawrence Drerup, a neurosurgeon. Williams saw Dr. Drerup on June 3, 2003, and Dr. Drerup took Williams off work pending further evaluation and testing.

A cervical myelogram was performed on June 6, 2003. The findings of that study indicated that Williams was suffering from bulging discs. Williams then began

1

seeing Dr. Stephen Katz for cervical epidural steroid injections. In January 2004, Williams was still under the restriction that he was not to drive commercial vehicles. There was no recommendation of surgery, however, Williams was advised to curtail his activities.

Defendant paid Williams weekly indemnity payments in the amount of $416.00 until October 3, 2003. Benefits were discontinued at that time on Defendant's assertion that Williams was working. Williams then filed a disputed claim for compensation alleging wrongful termination/reduction of benefits. On February 3, 2004, Defendant answered and filed a reconventional demand alleging that Williams violated La.R.S. 23:1208 and had, therefore, forfeited all benefits. According to Defendant, Williams made statements to the claims handler that he was not working while Defendant had obtained video surveillance purporting to show that Williams was working at his brother's tractor shop. Williams denied this allegation. Williams did not receive any medical or indemnity benefits after the filing of the reconventional demand.

Following a trial on the merits, the WCJ found that Williams proved that he sustained a work-related injury on April 29, 2003. The WCJ went on to find that Williams had not violated the provisions of La.R.S. 23:1208. The WCJ then found that Williams established that he was entitled to SEB from the date indemnity benefits were terminated and to indemnity and medical benefits from the time that Defendant claimed the La.R.S. 23:1208 violation. Finally, the WCJ found that the termination of benefits was arbitrary and capricious and awarded a $2,000.00 penalty and $6,500.00 in attorney's fees. Defendant is now before us on appeal, asserting that Williams is not entitled to SEB, that the WCJ erred in awarding penalties and

2

attorney's fees, that the WCJ failed to consider its fraud defense, and that the WCJ committed manifest error in finding that Williams sustained a work-related injury. We note that Williams has neither answered the appeal nor filed his own appeal.

## DISCUSSION

It is well-settled that:

> The standard of review applied to factual findings in workers' compensation matters is the manifest error standard. This standard, which is based upon the reasonableness of the factual findings in light of the record reviewed in its entirety, is well established in our jurisprudence following the seminal cases of *Rosell v. ESCO*, 549 So.2d 840 (La.1989), and *Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880 (La.1993).

*Lollis v. Shaw Global Energy Serv.*, 07-395, p. 3 (La.App. 3 Cir. 10/03/07), 966 So.2d 1118, 1120. When the fact finder's conclusions are reasonable in light of the record reviewed in its entirety, this court cannot reverse, even if it would have weighed the evidence differently. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990).

This court has also recognized:

> As stated in *Bruno v. Harbert Int. Inc.*, 593 So.2d 357, 361 (La.1992):
>
> > A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise*, Workers' Compensation, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends. Malone & Johnson, *supra*; *Nelson* [*v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991) ]. Corroboration may also be provided by medical evidence. *West, supra*.

*Lollis*, 966 So.2d at 1120-21.

3

In this case, Defendant argues that "[t]he trial court committed manifest error finding that the claimant had sustained an injury by accident in the course and scope of his employment in the first place, pretermitting all other assignments of error and issues in the case." Accordingly, we will consider this argument first.

Defendant asserts that two unbiased witnesses testified that Williams had been injured in a car race the weekend before the alleged work-related accident. Eve and Kenneth Fulmar both testified, via deposition, that they told Edgar Wade Webb, Williams' "front line leader" at Averitt, that one of his employees had been racing at Thunder Valley Speedway and had "hit the wall" the weekend before Williams' alleged work-related accident. Mr. Fulmar testified that he did not think anyone was injured in the crash. However, Mr. Fulmar admitted that he did not know for sure that Williams was driving the car that wrecked and the only way that he knew that it had anything to do with Williams is because Webb told him what Williams' car looked like. Webb also testified at trial as to what the Fulmars told him. Williams testified that he was not involved in any racetrack accident. We agree with the WCJ in his statement:

> [T]he employer is relying primarily upon double hearsay evidence that is that the Fulmars related what they heard an announcer at a racetrack announce. They had no personal knowledge of who Mr. Kim Williams was. There is no corroborating evidence submitted on behalf of the employer that this particular Mr. Kim Williams involved in this litigation, was involved in any car wreck at any racetrack or sought any medical care as a result of any alleged car wreck at any racetrack.

The WCJ also found that Williams' version of the accident was corroborated by the report of injury form filled out by the employer and that the relation of the occurrence of the accident was further corroborated in the medical records from each and every physician from whom Williams sought treatment. The WCJ found

4

Williams to be a credible witness. As we have recognized, under the manifest error standard of review, reasonable credibility evaluations and factual inferences should not be disturbed upon review where conflict exists in the testimony or the facts. Such is the case here. Based on the record before us, we cannot say the WCJ was manifestly erroneous or clearly wrong in its factual finding on this issue. Accordingly, we affirm the WCJ's ruling that Williams proved he sustained an injury in a work-related accident.

We next consider Defendant's argument that the WCJ committed legal error in awarding SEB to Williams by failing to include a decree in the judgment and by misstating and misapplying the applicable burden of proof. According to the provision of La.R.S. 23:1221(3)(a), in order to be entitled to receive SEB, a claimant must prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. The burden of proof is as follows:

> The claimant bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in the inability to earn that amount, under the facts and circumstances of the case. *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733. If the claimant meets this burden, then the burden shifts to the employer to prove that the claimant is physically able to perform a certain job and that the job was offered to the claimant or that the job was available to her or within her or the employer's geographic region. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551. If the employer satisfies that burden, then the claimant must show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the offered or available employment, solely as the result of substantial pain. LSA-R.S. 23:1221(3)(c)(ii); *Payne v. Lawn Lourd Lawn Service*, 35,491 (La.App. 2d Cir.12/5/01), 803 So.2d 321.

*Brooks v. Madison Parish Serv. Dist. Hosp.*, 41,957, p. 13 (La.App. 2 Cir. 3/7/07), 954 So.2d 207, 215, *writ denied*, 07-720 (La. 5/18/07), 957 So.2d 155.

5

Furthermore,

> The SEB statute does not permit a claimant to choose not to work and still collect SEB when he is physically able to work and suitable jobs are available. *Blanchard v. Federal Exp. Corp.*, 95-0349, p. 4 (La.App. 1 Cir. 11/9/95), 665 So.2d 11, 13. However, a "suitable job" is one that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age experience, and education. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 11 (La.7/1/97), 696 So.2d 551, 557.

*Adams v. Dependable Source Corp.*, 06-1331, p. 6 (La.App. 1 Cir. 5/4/07), 961 So.2d 1183, 1187.

Williams' major job activity was as a commercial truck driver. He testified that pre-accident, he was earning approximately $60,000.00 per year. Post-accident, Williams was earning $14,000.00 to $31,000.00 per year. Williams returned to work sometime in 2004. At the time of trial, he was employed as a school bus driver for Rapides Parish School Board and ran his own business as a delivery driver. He testified that he made about $14,000.00 from the school board and from $400.00 to $600.00 per week in his delivery business. Defendants produced records showing that Williams had revenues from deliveries of $21,583.00 in 2005, and $26,613.00 in 2006. Defendant contends that Williams is working when he chooses to, earning what he chooses to, and is in complete unilateral control of his own earnings. Williams, on the other hand contends that he is unable to return to his previous employment with Defendant and that he is unable to earn at least ninety percent of his pre-injury wages.

We conclude that the medical exhibits reflect that the WCJ had sufficient evidence from which to conclude that Williams' earning capacity was severely curtailed and that he was not engaged in suitable employment. As such, Williams met his burden of proof, and the burden shifted to Defendant. The WCJ noted, and we

6

agree, that "there has been no showing that he has ever been release[d] by any physician to return to the operation of a commercial vehicles [sic] and that "[t]he employer made absolutely no showing of any available job that would pay Mr. Williams 90 percent of his pre-injury wage." Accordingly, we conclude that the WCJ did not err in awarding SEB to Williams because he was not employed in a suitable job. This assignment of error lacks merit.

Defendant also complains that the WCJ performed no calculations as to the rate of SEB and that the judgment does not specify a start time or ending time for SEB. Defendant's assertion is not entirely correct. The judgment does specify that SEB is owed "from the date defendant, Averitt Express terminated his indemnity benefits." The method of determining the amount of an award of SEBs is provided in La. R.S. 23:1221(3)(a):

> For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.

The WCJ determined that Williams' average weekly wage was $1,131.36, giving him an average monthly wage of $4,902.56. From the record, we have determined that Williams actually earned an average of $3,174.84 per month post-accident. The difference between his pre-accident average monthly wage and his post-accident average monthly earnings is $1,727.72. Sixty-six and two-thirds

7

percent of that figure is $1,151.87. We conclude that Williams is entitled to monthly SEBs of $1,151.87 beginning October 3, 2003, the date benefits were terminated. Accordingly, we amend the judgment to reflect this figure and start date. No end date is required in judgment as SEB discontinues by operation of law upon the occurrence of one of the events listed in La.R.S. 23:1221(3)(d) or the passage of five hundred and twenty weeks (the maximum period for which the right to SEB extends).

We next turn to the issue of penalties and attorney's fees. Defendant contends that the law does not allow the award of a penalty for not continuing to pay SEB. As stated above, Williams received weekly indemnity payments in the amount of $416.00 until October 3, 2003. Williams contended that Defendant wrongfully terminated said benefits and the WCJ agreed.

Louisiana Revised Statutes 23:1201(I) provides, in pertinent part:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

This portion of the statute became effective in 2003 when La.R.S. 23:1201.2 (cited by Defendant) was repealed. Thus, this provision was effective when benefits were terminated in this case. A WCJ's decision to award penalties and attorney's fees is subject to the manifest error standard of review. *Bolton v. Mike Fleming Const.*, 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. We find no manifest error in the WCJ's imposition of penalties and attorney's fees.

Defendants finally contend that the WCJ failed to actually consider its fraud defense in that the WCJ did not consider Williams' alleged false statements to the claims handler. Instead, according to Defendant, the WCJ focused on whether or not

8

Williams was actually working. In *Cotton v. First Fleet*, 07-29, p. 5 (La.App. 3 Cir. 5/2/07), 957 So.2d 229, 234-35, *writs denied*, 07-1488, 07-1543 (La. 10/5/07), 964 so.2d 947, 948, this court noted that:

> Under the unambiguous and clear language of the statute, an employer claiming that an employee has violated La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La.9/5/95), 660 So.2d 7, 12. If the WCJ finds that all three of "these requirements are met, Section 1208 applies and its forfeiture provisions must be enforced." *Id*. at 14.

> The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact, and is, therefore, subject to the manifest error standard of review. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. However, we must keep in mind that La.R.S. 23:1208(E) is penal in nature. Any statute that is penal in nature must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14; *Olander v. Schillilaegh's*, 04-725 (La.App. 3 Cir. 3/23/05), 899 So.2d 97.

Defendant contends that it is not "splitting hairs" in this assignment of error, but we do not agree. The WCJ necessarily had to analyze whether or not claimant was actually working to determine whether or not he made a false statement concerning the same to the claims handler. The WCJ concluded the Williams was not actually working during the period in question. We agree with the WCJ and with Williams' assertion that the evidence supports the conclusion that Williams was not, in fact, working at the time the alleged statements were made to the claims handler. There was testimony that Williams did not work for his brother, was never paid for work by his brother, and the video surveillance did not prove that he was employed there. We find no manifest error in the WCJ's findings in this regard.

9

**DECREE**

For the foregoing reasons, we amend the judgment of the WCJ to reflect that SEB is to be paid in the amount of $1,151.87 per month, beginning October 3, 2003, the date benefits were terminated, plus interest. In all other respects, the judgment of the WCJ is affirmed. Costs of this appeal are assessed against Defendant-Appellant, Averitt Express, Inc.

**AFFIRMED AS AMENDED.**