KUHN, J.
| ¡Appellant-claimant, Stephanie Nitcher, appeals from a judgment of the Office of Workers’ Compensation (OWC) denying her claim for temporary or permanent total disability benefits, as well as her claims for penalties and attorney fees. For the reasons assigned, we affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL BACKGROUND

In 2005, Nitcher filed a disputed claim for compensation claiming entitlement to temporary or permanent total disability benefits, continued medical treatment,penalties and attorney’s fees. On November 13, 1995, Nitcher was employed as a respiratory therapist by appellee-employer, Northshore Regional Medical Center (NRMC), when she injured her lower back in a work accident that occurred as she attempted to open the drawer of a file cabinet and it fell forward on her. Subsequently, Nitcher underwent a percutaneous discectomy at L5-S1 in 1996, and a lumbar laminectomy with a cage fusion at L5-S1 in 1998. She has not returned to work since the accident.
Nitcher was paid a combination of temporary total disability benefits and supplemental earning benefits for a period in excess of 520 weeks, after which indemnity benefits were terminated in October of 2007. Thereafter, Nitcher amended her disputed claim for compensation to seek indemnity back pay, authorization for medical treatment, and additional penalties and attorneys fees for termination of benefits.
Following a trial on March 24, 2011, the OWC issued a judgment denying Nitcher’s claim for temporary or permanent total disability benefits on the grounds that she failed to prove by clear and convincing evidence that she was unable to|aengage in any employment, because the medical evidence indicated she was capable of at least sedentary work. However, the OWC rendered judgment in favor of Nitcher on the issue of NRMC’s failure to authorize medical treatment, finding that a lumbar disco-gram recommended by her treating physician was necessary. In addition to paying the cost of that procedure, NRMC was ordered to pay a penalty of $2,000.00 and attorney fees of $3,000.00 for failing to authorize the procedure. NRMC was further ordered to pay unpaid mileage related to Nitcher’s medical treatment, as well as $2,000.00 in penalties and $3,000.00 in attorney fees for that nonpayment. Nitcher has now appealed, raising the following assignments of error:
1. The OWC erred in failing to strike and disregard the testimony of Kathleen Falgoust as to vocational rehabilitation services she provided to Nitcher.
*1006 2. The OWC committed manifest error in failing to award Nitcher indemnity benefits for permanent total disability or temporary total benefits.
3. The OWC erred in failing to award Nitcher penalties and attorney fees for NRMC’s termination of indemnity benefits.
4. The OWC erred in excluding “Exhibit F,” as well as Nitcher’s testimony, regarding the lack of authorization for medical appointments.
5. The OWC erred in failing to award penalties and attorney fees for NRMC’s denial of authorizations for medical appointments.
6. The OWC erred in determining that Nitcher’s average weekly wage was $459.93 at the time of her accident.
7. The OWC erred in not assessing all litigation costs to NRMC.
8. The OWC erred in the amount of attorney fees awarded, which should be increased.

\ ¿TESTIMONY OF VOCATIONAL REHABILITATION COUNSELOR

In her first assignment of error, Nitcher contends this Court should disregard the entirety of Kathleen Falgoust’s testimony as to the vocational rehabilitation services she provided to Nitcher, because the OWC erred in denying the motion to strike made at trial regarding this testimony. Specifically, she alleges this testimony should have been excluded because: 1) Falgoust did not provide meaningful rehabilitation to Nitcher; 2) Fal-goust did not provide Nitcher with a list of suitable jobs; and 3) Falgoust was not neutral in rendering her opinion.
Initially, we observe that Nitcher did not actually file a motion to strike at trial, but did object to Falgoust’s testimony. In fact, Nitcher’s objection was somewhat unusual because, after calling Falgoust as a witness, Nitcher then objected to the testimony as a vocational rehabilitation expert. The stated basis of the objection was the fact that, although counsel subpoenaed her entire file, Falgoust did not bring all the medical records contained in her file to trial. Falgoust explained that she produced everything from her file that she had done from a vocational point of view.
We find no error in the OWC overruling Nitcher’s objection. First, the arguments made by Nitcher actually go to the weight of Falgoust’s testimony, and not to its admissibility. Second, even if the issue was one of the testimony’s admissibility, the decision to admit or exclude expert testimony is within the sound discretion of the trial court, and its judgment will not be disturbed by an appellate court unless it is clearly erroneous. See La. C.E. art. 702, comment (d); Devall v. Baton Rouge Fire Department, 07-0156 (La.App. 1st Cir.11/2/07), 979 So.2d 500, 503. At trial, Nitcher did not object to Fal-goust’s qualification as a vocational rehabilitation counselor, but merely complained that she had not produced all of the medical records contained in her file. However, the issue of which medical records Fal-goust reviewed in reaching her conclusions was a matter that Nitcher could explore through questioning. Further, in overruling the objection, the OWC indicated it was probably unreasonable to expect the witness to produce all of the medical records in the context of a “voc file,” and her failure to do so did not disqualify her from testifying. We find no error or abuse of discretion in this determination.
This assignment of error lacks merit.

DISABILITY DETERMINATION

In her second assignment of error, Nitcher contends the OWC committed manifest error in finding that she did not meet her burden of proving entitlement to *1007 permanent total disability benefits, or alternatively temporary total benefits.
A workers’ compensation claimant who seeks temporary total or permanent total disability benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work. La. R.S. 23:1221(l)(c) and (2)(c). In the absence of such evidence, the claimant’s demand for temporary total or permanent total disability benefits fails. See Walker v. High Tech Refractory Services, Inc., 03-1621 (La.App. 1st Cir.6/25/04), 885 So.2d 1185, 1188. The issue of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the issue of disability is determined with reference to | fithe totality of the evidence, including both lay and medical testimony. Walker, 885 So.2d at 1188. While the workers’ compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant’s burden. Isaac v. Lathan, 01-2639 (La.App. 1st Cir. 11/8/02), 836 So.2d 191, 199. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Tillery v. State, Department of Public Safety and Corrections, 07-1228 (La.App. 1st Cir.2/8/08), 984 So.2d 742, 744.
It is undisputed that Nitcher cannot return to her former employment as a respiratory therapist. However, the reasons for judgment reflect that the OWC relied on the opinions of Doctors Logan, Moss and Laborde that Nitcher could perform at least sedentary work, combined with a list of jobs Falgoust identified as suitable for Nitcher, in concluding that she was not either temporarily or permanently totally disabled. Upon a thorough review of the record, we conclude this factual determination was manifestly erroneous for the following reasons.
It is true that Dr. John Logan, an orthopedic surgeon and Nitcher’s treating physician since 2002, did indicate in his 2006 deposition that she was capable of performing part-time sedentary work, with restrictions. Yet, despite this statement, when the entirety of his deposition and his medical records are considered as a whole, it is abundantly clear that he was of the opinion that she was incapable of returning to work as a practical matter. Almost immediately after saying in his deposition that she could do sedentary work, he stated: “The problem with that is I don’t know ... I don’t know if there’s true sedentary work in the community available to somebody who is in pain, who has to change positions frequently and may have an [sic] excessive absenteeism due to their pain.” |7[Emphasis added.] Further, when questioned as to whether Nitcher could perform light duty work, he responded that:
Intuitively, yes, but with the constraints I said before. You know, you’re asking me light duty. What I immediately focus on is the federal guidelines as I know them, lifting no more than, what is it, five to eight pounds, ... changing positions frequently. The problem is do we have a light duty position in reality. And I’m not sure we do. Again because of absenteeism due to pain, narcotic medications. I mean to do the actual physical demands of light duty, I would answer yes. To do the demands of full-time employment, I would probably say no. And those are two separate things that we never put into account when I’m asked if a patient can do light duty. [Emphasis added.]
Additionally, Falgoust, the vocational counselor hired by NRMC, sent Dr. Logan a list of jobs to review in December 2007, for possible approval as being suitable for *1008 Nitcher. He responded emphatically that Nitcher was “unable to return to work in any capacity.” Further, shortly before trial, Dr. Logan indicated in a January 2011 “rehab report” that “she remains unfit for duty....” The bottom line is that, despite statements in his 2006 deposition that Nitcher could perform sedentary work and possibly some light-duty work, Dr. Logan never released her as being fit for duty. His deposition testimony and medical records as a whole reflect that he did not believe Nitcher was capable of returning to work in any capacity due to her continued pain, as well as the effects of the narcotic medications she was required to take to control that pain.
At trial, evidence was also presented that Dr. John Steck, a neurosurgeon, examined Nitcher in November 2006, and opined that she could return to work in a sedentary to light-duty position. She was also examined by Dr. J. Lee Moss, an orthopedist, in August 2006, and he likewise was of the opinion that she was capable of sedentary work. Dr. Moss approved several jobs submitted to him by LFalgoust as being within Nitcher’s capacities. However, when she submitted additional jobs for his approval, he indicated that the approval or denial of jobs was a matter better handled by Nitcher’s treating physician. Both Dr. Steck and Dr. Moss were selected by NRMC for the purpose of obtaining second opinions, and saw Nitcher on only one occasion in 2006.
Dr. J. Monroe Laborde, an orthopedic surgeon who conducted an independent medical examination for the OWC in 2007, concluded that Nitcher had a forty percent whole body impairment. Nevertheless, he opined in his August 2008 deposition that she was not totally disabled and could return to sedentary work with a restriction of ten pounds maximum lifting. Dr. La-borde also reviewed and approved several jobs Falgoust sent to him as being suitable for petitioner.
However, in his deposition testimony, Dr. Laborde significantly qualified his disability determination by candidly explaining that his opinion was based strictly on Nitcher’s physical orthopedic condition, and that he did not consider other relevant factors that he would have taken into account if he had been her treating physician. He acknowledged that, in rendering his opinion, he did not possess additional information that was available to her treating physician, who was familiar with Nitcher, her overall treatment, and her response thereto. He explained that:
In other words, based on strictly her physical condition, there are three doctors who agree she’s physically capable of sedentary work. If you add into that psychological factors, lack of response to treatment, and inability to get patient back to work of any type for over a period of many years, then that could combine to cause me or Dr. Logan to say she’s totally disabled.
|flFor that reason, he indicated he had no reason to disagree if Nitcher’s treating physician believed she was totally disabled.
At trial, Nitcher testified that she was receiving ongoing treatment with a pain management physician who had treated her for over a decade due to pain she continued to experience in her back and legs. In order to manage the pain, she received injections on occasion and took numerous pain medications, including narcotic drugs that affected her ability to think clearly and caused fatigue and drowsiness. As a result, she generally napped two to three times a day, for a total of two to three hours. Additionally, Nitcher testified that she had to frequently change positions by standing up, sitting down, lying down, or generally moving about. Depending on her level of pain, she could *1009 sometimes sit for thirty to sixty minutes at a time, although at other times she could sit a little less or a little more than that.
As previously noted, based on the totality of the evidence presented, both medical and lay, we conclude the OWC was manifestly erroneous and clearly wrong in finding that Nitcher was not permanently totally disabled. First, by focusing exclusively on only select portions of Dr. Logan’s deposition testimony, the OWC appears to have erroneously concluded that he agreed with Doctors Moss and La-borde that she could return to work performing sedentary duties. By thus limiting its focus, the OWC apparently either ignored or misconstrued the fact that his disposition as a whole, as well as his medical records and emphatic responses to Falgoust’s inquires about suitable jobs, reveal that he did not believe Nitcher was capable of working as a practical matter, due to her pain, medications, and applicable restrictions, including excessive absenteeism.
| ^Second, Dr. Logan’s opinion that Nitcher was unfit for duty was the only current medical opinion presented at the time of the 2011 trial, since the other physicians had not seen her since either 2006 or 2007. Additionally, although Drs. Steck, Moss, and Laborde each opined that Nitcher was capable of performing sedentary work, each of these doctors saw Nitcher on only one occasion for evaluation, as opposed to Dr. Logan, who had been her treating physician for almost a decade at the time of trial. The general jurisprudential rule is that a treating physician’s opinion is entitled to more weight than that of a non-treating physician. McCray v. Delta Industries, Inc., 00-1694 (La.App. 1st Cir.9/28/01), 809 So.2d 265, 272.
In accordance with this principle, Dr. Moss, after initially approving several job descriptions sent to him by Falgoust, indicated that Nitcher’s treating physician was better suited for determining whether or not she was capable of performing specific jobs. Moreover, Dr. Laborde also implicitly acknowledged the correctness of giving greater weight to a treating physician’s opinion when he explained that a treating physician had more relevant information available to him in making a disability determination. It was for this reason that he testified he had no basis to disagree if Dr. Logan concluded Nitcher was totally disabled.
Third, in its reasons for judgment, the OWC also appeared to give great weight to Falgoust’s testimony regarding the list of purportedly suitable jobs she located for Nitcher that were approved by either Drs. Moss or Laborde, but for which Nitcher failed to apply. In doing so, the OWC apparently ignored the fact that Dr. Logan refused to approve the jobs, even though Drs. Moss and Laborde both indicated that, as her treating physician, Dr. Logan was in a better position to |nmake that determination. The jobs identified by Fal-goust failed to meet the restrictions imposed by Dr. Logan of being part-time employment that permitted frequent absenteeism. All of the jobs were for full-time positions. Further, although Fal-goust spoke to two recruiters who indicated they would consider a candidate requiring a job where they could frequently change physical positions, she did not verify that frequent absences would be acceptable in those positions. Given these circumstances, the OWC manifestly erred in finding that Falgoust identified suitable jobs for Nitcher.
Finally, we note that, in finding that Nitcher was not totally disabled, the OWC also considered it significant that no evidence was offered of any attempts by her pain management physician to wean her off of her medications, even though she *1010 testified that she could not work because of the effects of those medications. However, we believe it was improper for the OWC to consider this factor as mitigating against Nitcher’s claim of disability. At trial, there was absolutely no evidence presented, medical or lay, to suggest that the medications were not medically necessary to control her pain. Nitcher was under no obligation to discontinue medically necessary medications prescribed by her doctors.
Thus, considering the totality of the evidence, including Dr. Logan’s opinion that Nitcher was incapable of returning to work, together with her testimony regarding her pain and the detrimental effects of her medications, we find that the OWC erred in finding that Nitcher failed to prove by clear and convincing evidence that she is permanently totally disabled from any employment. Having met that burden of proof, Nitcher is entitled to benefits for | ^permanent total disability.[1] The judgment of the OWC must be reversed to the extent that it denied her claim for such benefits.
This assignment of error has merit.

PENALTIES AND ATTORNEY FEES

In her third assignment of error, Nitcher argues the OWC erred in denying her claim for penalties and attorney fees for NRMC’s arbitrary discontinuance of indemnity benefits. In her fifth assignment of error, she contends the OWC further erred in denying her claim for penalties and attorney fees for NRMC’s arbitrary and capacious refusal to authorize medical appointments.
Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Further, while the Worker’s Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Iberia Medical Center v. Ward, 09-2705 (La.11/30/10), 53 So.3d 421, 433-434.
At the time of claimant’s injury, two statutory provisions provided the authority for assessing attorney fees and/or penalties. Louisiana Revised Statute 23:1201(F) covered situations in which the employer failed to commence, or recommence, payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely. Under this statutory provision, both penalties and attorney’s fees were recoverable unless the claims were reasonably controverted. Additionally, pursuant to La. R.S. 23:1201.2, the employer could be liable for the | ¶¡¡payment of attorney fees, but not penalties, if the employer arbitrarily and capriciously discontinued the payment of benefits due.[2] A determination of whether an employer has been arbitrary or capricious or has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review. Atwell v. First General Services, 06-0392 (La.App. 1st Cir.12/28/06), 951 So.2d 348, 357, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699. The Louisiana Supreme Court has stated that “[ajrbitrary and capricious behavior consists of willful and unreason *1011 ing action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.” Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890.
In the instant case, NRMC terminated Nitcher’s indemnity benefits after receiving opinions from several physicians that she was capable of performing sedentary work. Moreover, at the time of the termination, Nitcher had exhausted her SEB benefits. Under these circumstances, although we have concluded herein that Nitcher met her burden of establishing that she is permanently totally disabled, we find no manifest error in the OWC’s denial of penalties and attorney fees for the termination. Based on information NRMC possessed, while the termination ultimately was erroneous, it was not a willful and unreasoning action taken without consideration of the facts.
Additionally, we also find no error in the denial of penalties and attorney fees for NRMC’s alleged failure to authorize medical appointments. An employer’s refusal to authorize reasonable and necessary medical treatment for an | ]4injured employee may justify an award of penalties and attorney fees. See La. R.S. 23:1201(F); Nelson v. Windmill Nursery of Louisiana, L.L.C., 04-1941 (La.App. 1st Cir.9/23/05), 923 So.2d 709, 712, writ denied, 05-2294 (La.3/10/06), 925 So.2d 516. Yet, in this case, the OWC obviously rejected Nitcher’s broad testimony that she had difficulty getting authorization for medical appointments on multiple occasions as being insufficient to carry her burden of proof on this claim.
Initially, we note that Nitcher testified at trial primarily as to alleged difficulties in obtaining authorizations for medical appointments, rather than as to actual denials of authorization. While she did testify that she had to reschedule several appointments because they were not timely authorized, she provided no information as to how or when the requests for authorization were made. Further, although she also testified that she personally paid for an appointment with Dr. Logan on one occasion, she gave no details as to the circumstances involved. While she asserts that her claims are corroborated by notations in Dr. Logan’s records, she failed to correlate those notations with any specific instances of authorization for medical appointments being denied or unreasonably delayed. Accordingly, based on our review of the record, and especially considering that penalties and attorney fees are penal in nature, we are unable to say the OWC was manifestly erroneous in rejecting this claim.
This assignment of error lacks merit.

EXCLUSION OF EVIDENCE

In her fourth assignment of error, Nitcher claims that the OWC erred in excluding from evidence an exhibit and her related testimony as to the denial of | ^authorization for medical appointments as a sanction for her failure to timely answer interrogatories.
The record reveals that NRMC served Nitcher’s attorney on February 8, 2011, with interrogatories requesting that he identify the specific dates of the medical appointments Nitcher claimed were unauthorized and for each of those appointments to describe in detail each communication she had with the medical provider’s staff regarding authorization of the appointment. When Nitcher did not respond, NRMC filed a motion to compel on March 17, 2011, which was set for hearing on March 24, the scheduled trial date.
Upon hearing the motion, the OWC concluded that, although Nitcher responded to NRMC’s interrogatories after the motion to compel was filed, the responses were *1012 inadequate. In granting the motion to compel, the OWC stated:
These — the responses don’t give any— they don’t give anybody, especially me, any specifics about what you’re alleging for delayed medical treatment, payment of medical treatment, denial of medical treatment that she was requesting wasn’t made.
... It’s not their job to go digging around to guesstimate which bill might have been paid late or might have not been paid at all such that it would give you a claim for that.
In reaching its ruling, the OWC rejected Nitcher’s argument that she was prevented from answering the interrogatories properly by NRMC’s own delay in producing the claim adjuster’s file on her case. According to her attorney, he needed the file to adequately answer NRMC’s interrogatories, but was only able to obtain the file from NRMC on March 17 after filing a motion to compel. Thus, he claims he had insufficient time to prepare responses to the interrogatories. Like the OWC, we find this argument unpersuasive. Nitcher had one week after | ^receiving the file to prepare responses to the interrogatories. Moreover, it appears the necessary information should have been available to her from other sources, including her own records or those of her medical providers.
As a sanction for failing to properly answer NRMC’s interrogatories, the OWC granted NRMC’s request to exclude an exhibit (“Claimant’s Exhibit F”) offered by Nitcher pertaining to an allegedly unpaid medical bill. Pursuant to La. C.C.P. art. 1473, if a party fails to answer interrogatories, the court in which the action is pending may, on motion, make such orders in regard to the failure as are just, and may impose certain sanctions authorized under La. C.C.P. art. 1471, including prohibiting a party from introducing designated matters into evidence. However, the trial court’s discretionary authority to disallow evidence at trial, based on a party’s failure to answer interrogatories, should be exercised only when the ends of justice dictate exclusion of the evidence. See Varnell v. Louisiana Tech University, 28,266 (La.App. 2d Cir.4/3/96), 671 So.2d 1238, 1240. Among the factors to be considered in imposing sanctions for a party’s failure to comply with a discovery request are the prejudice to the other party and the wilfulness of the noncomplying party. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 204.
In the instant case, the OWC indicated it was excluding Exhibit F as a matter of fairness. It observed, in particular, that despite the fact that the outstanding discovery was discussed at an earlier hearing on March 11, Nitcher’s attorney had still failed to adequately respond at the time of trial on March 24. Furthermore, the attorney offered no valid explanation for that failure. Consequently, we find no abuse of discretion in the OWC’s exclusion of Exhibit |17F. Nitcher further claims that the OWC improperly limited her testimony related to unauthorized medical appointments. However, we note that, while the OWC initially refused to allow her to testify on direct examination as to difficulties she had in obtaining authorizations for appointments, it allowed her to testify on this issue on redirect examination.
This assignment of error lacks merit.

AVERAGE WEEKLY WAGE

In her sixth assignment of error, Nitcher asserts the OWC erred in determining that her average weekly wage was $493.59 at the time of her injury. At trial, Nitcher testified that she was working full-time and earning approximately $20.00 per hour at that time. Based on that testimony, her average weekly wage would have been $800.00. Since no evidence was of *1013 fered to rebut her testimony, she contends the OWC erred in rejecting her testimony.
In its reasons for judgment, the OWC stated that:
As noted above, counsel stipulated to Ms. Nitcher’s compensation rate of $329.06 per week. While Ms. Nitcher testified that she usually made around $20.00 per hour at NRMC, she offered no credible documentary evidence to support this assertion. Given the pen-dency of her claim for almost six years, there was ample opportunity to obtain wage records through discovery. For these reasons, the court concludes that Ms. Nitcher’s average weekly wage at the time of her injury was $493.59 ($329.06 compensation rate X 1.5).
Based on our review, we find no error by the OWC. As noted, counsel stipulated to Nitcher’s weekly compensation rate and the OWC extrapolated her average weekly wage from that amount. The calculation of a claimant’s average weekly wage is a factual finding subject to the manifest error-clearly wrong standard of review. Tucker v. St. Tammany Parish School Board, 03-2401 (La.App. 1st Cir.9/17/04), 888 So.2d 235, 236. Given the stipulation of counsel, as well as the fact that Nitcher raised no serious objection to her compensation rate for over ten years, we cannot say the OWC manifestly erred in rejecting Nitcher’s testimony concerning her purported earnings at the time of her injury.[3] Moreover, as noted by the OWC, Nitcher had ample opportunity during the pendency of this matter to obtain documentary evidence in support of her claim, but failed to do so.
This assignment of error lacks merit.

LITIGATION COSTS

In her seventh assignment of error, Nitcher contends the OWC erred in failing to assess all costs against NRMC. Specifically, she argues she is entitled to recover the litigation costs she incurred, including the cost of Dr, Logan and Dr. Laborde’s depositions.
In workers’ compensation cases, the awarding of costs is governed by La. R.S. 23:1317(B), pursuant to which the matter lies within the sound discretion of the OWC.[4] See Boleware v. City of Bogalusa, 01-1014 (La.App. 1st Cir.12/20/02), 837 So.2d 71, 75. In this case, rather than assessing all costs against one party, the OWC ordered each party to bear their own costs. We conclude this order was within the OWC’s sound discretion, particularly since neither party | ^prevailed completely on all of their claims in this matter.
This assignment of error lacks merit.

ATTORNEY FEES

In her eighth assignment of error, Nitcher contends the amount of attorney fees awarded by the OWC was erroneous and should be increased by $5,000.00 due *1014 to the additional work her attorney performed on appeal.
The amount of attorney fees awarded by the OWC pursuant to La. R.S. 23:1201 is reviewed under an abuse of discretion standard. Adams v. Dependable Source Corporation, 06-1331 (La.App. 1st Cir.5/4/07), 961 So.2d 1183, 1189. In this case, the OWC awarded Nitcher a total of $6,000.00 in attorney fees. To the extent that she is complaining that this amount is inadequate, we find no abuse of discretion by the OWC, which had the opportunity to observe the nature and extent of the work performed by counsel below and to set the awards in accordance therewith.
Additionally, an increase in attorney fees generally should be granted when a party who was awarded attorney fees in the trial court is forced to and successfully defends against an appeal. Bergeron v. Watkins, 98-0717 (La.App. 1st Cir.3/2/99), 731 So.2d 399, 405. Conversely, in this case, rather than being forced to defend against an employer’s unsuccessful appeal, Nitcher was the party who brought this appeal. Moreover, she has been only partially successful on appeal. Consequently, we do not believe Nitcher is entitled to additional attorney fees.
This assignment of error lacks merit.

^CONCLUSION

For the reasons assigned, that portion of the May 19, 2011 judgment of the Office of Workers’ Compensation denying the claim of Stephanie Nitcher for temporary or permanent total disability benefits is reversed, and judgment is hereby entered ordering that she is entitled to permanent total disability benefits. This matter is remanded to the OWC for further proceedings consistent with our rulings herein. Specifically, on remand, the OWC is to calculate the specific amount due and to render judgment in favor of Nitcher accordingly. The judgment on appeal is affirmed in all other respects. The costs of this appeal are to be shared equally by the parties.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, AND REMANDED.

. We note that a classification of permanent, total disability can always be modified should circumstances change. Severio v. J.E. Merit Constructors, Inc., 02-0359 (La.App. 1st Cir.2/14/03), 845 So.2d 465, 471.

. Louisiana Revised Statutes 23:1201.2 was repealed by La. Acts 2003, No. 1204, § 2. Section 1 of Act 1204 added La. R.S. 23:1201(1), which authorizes the imposition of penalties, as well as attorney fees, if an employer arbitrarily, capriciously, or without probable cause discontinues the payment of benefits due.

. In her disputed claim for compensation, Nitcher did allege that her compensation rate was incorrect, and should be increased to $330.00 per week, a difference of 940 from what she was receiving.

. Additionally, La. R.S. 23:1310.9 provides that, if the OWC determines that the proceedings have not been brought on a reasonable ground or that the denial of benefits was not based on a reasonable ground, then all costs should be assessed against the party responsible for bringing the proceedings or the party who unreasonably denied the payment of benefits. However, an award of the total costs of the proceedings is mandatory under this statute only upon a finding that a compensation proceeding was not brought on a reasonable ground or that denial of benefits was not based on a reasonable ground. Since the OWC made no such finding in this case, La. R.S. 23:1310.9 is not applicable herein. Boleware, 837 So.2d at 74-75.