# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1319


LESTER RACCA

VERSUS

ACME TRUCK LINES, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 4
PARISH OF LAFAYETTE, NO. 06-01439
SHARON MORROW, WORKERS COMPENSATION JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, Marc T. Amy, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**


Saunders, J., dissents and assigns reasons.
Amy, J., concurs in part, dissents in part, and assigns reasons.

Michael B. Miller
Miller & Miller
P. O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
    Lester Racca

**Skylar J. Comeaux**
**Robicheaux & Collins**
**2014 W. Pinhook Road**
**Pinhook Tower, Suite 503**
**Lafayette, LA 70508**
**(337) 235-7888**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Acme Truck Lines, Inc.**

**SAUNDERS, Judge.**

This is a workers' compensation case where a claimant was injured in a motor vehicle accident while in the course and scope of his employment with a truck-driving company. The parties could not agree on the claimant's average weekly wage, and the employer also contended that the claimant had violated La.R.S. 23:1208 by failing to tell his treating physician that he was not only capable of working, but that he was actually working.

The Workers' Compensation Judge (WCJ) found, *inter alia*, that the claimant's average weekly wage was $210.53, that the claimant had violated La.R.S. 23:1208, that the claimant was capable of earning 90% of his pre-injury wages, and that claimant was entitled to $8,000.00 in attorney's fees.

## FACTS AND PROCEDURAL HISTORY:

Mr. Lester Racca, Sr. (Racca) was employed by Acme Truck Lines, Inc. (Acme) as a driver on a piecework basis. Racca entered into a lease agreement with Acme wherein he would be paid rental fees for the use of his truck and wages as a driver. On November 19, 2005, Racca was involved in an automobile accident while in the course and scope of his employment with Acme. He sustained a back injury as a result of the accident, which required surgery. Racca's claim for workers' compensation benefits was filed on March 7, 2006.

Trial began on February 19, 2008, and was continued until April 22, 2008. The trial was completed on April 8, 2009. The oral ruling was made in February 2012.

The WCJ found that Racca was entitled to temporary total disability benefits of $140.35 per week from November 26, 2005, through November 30, 2006, and $316.66 per month in supplemental earnings benefits from December 1, 2006, until March 21, 2007, subject to credits for post-accident wages paid of $932.57 and all

indemnity benefits paid. Further, the WCJ found that Acme owed Racca penalties of $7,450.00 and attorney's fees of $8,000.00. Finally, the WCJ found that Racca was in violation of La.R.S. 23:1208 no later than March 21, 2007, and, thus, forfeited any benefits beyond that date. The WCJ also ruled that each party was to pay its own costs.

Racca filed this appeal. He is alleging seven assignments of error.

## ASSIGNMENTS OF ERROR:

1. The WCJ erred in its calculation of Racca's average weekly wage and workers' compensation indemnity rate.

2. The WCJ erred in failing to award a penalty for underpayment of indemnity benefits and for termination of benefits.

3. It was error for the WCJ to find that Racca violated La.R.S. 23:1208.

4. The WCJ erred in failing to allow the police report into evidence.

5. It was error for the WCJ to limit the attorney fee award to $8,000.00.

6. The WCJ erred in finding that Racca was capable of earning ninety percent of his wages.

7. Racca's costs and expenses, along with legal interest on penalties and attorney fees, should have been awarded in the judgment.

## ASSIGNMENT OF ERROR NUMBER ONE:

In Racca's first assignment of error, he contends that the WCJ erred in its calculation of his average weekly wage and, thus, his workers' compensation indemnity rate. We find merit to this contention.

"Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556.

> If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of

2

days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.

La.R.S. 23:1021 (12)(d).

Here, the WCJ used Defendant's Exhibit #4 to determine Racca's gross earnings in her calculation of his average weekly wage. Using Defendant's Exhibit #4, the WCJ found that Racca's gross earnings were $4,428.96 for the twenty-six week period immediately prior to the accident. Racca asserts in brief that there were two days that he earned wages that should have been included in the WCJ's calculations, November 7, 2005, and November 13, 2005.

The WCJ, in her reasons for ruling, addressed these two dates, stating:

> The Claimant relies upon the W2 form, the Employer's Exhibit #24, but the attachments to the W2 form show paychecks issued after the week of the accident. One of those was for the week ending November 30th for wages of One Hundred Thirty-Six Dollars and Seventy-Nine Cents, and one was for the week ending December 7th for wages of Seven Hundred Ninety-Five Dollars and Seventy-Eight Cents. Those were included in the W2[,] but would not be included in the wage calculation[,] as they were [post-accident.] So the W2 is not the proper evidence to rely upon.

This reasoning by the WCJ is in error. Our review of Defendant's Exhibit #24 indicates that while the WCJ was correct in stating that the checks were issued post-accident, they were for work Racca performed prior to the accident. The check issued on November 30, 2005, was in payment for an invoice dated November 7, 2005, a date prior to the accident. Likewise, the check issued December 7, 2005, was for an invoice dated November 13, 2005. Thus, according to La.R.S. 23:1021(12)(d), these two amounts should have been included in the average weekly wage calculation.

Accordingly, we vacate the portion of the WCJ's judgment finding that Racca's average weekly wage is $210.31. As such, we must determine whether to remand the case for further proceedings or conduct a de novo review of the record to establish Racca's average weekly wage.

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164. The Louisiana Supreme Court, in *Gonzales v. Xerox Corp.*, 254 La. 182, 320 So.2d 163, 165-66 (1975) (citations and footnote omitted), stated the following:

> While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. . . .
>
> In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.

Here, neither Racca nor Acme asserts that there is evidence outstanding that has any bearing on Racca's average weekly wage. Further, neither asserts that the record before us is not complete. Thus, we will conduct a de novo review of the record to determine Racca's average weekly wage.

Racca asserts that his proper average weekly wage should not be based on his W-2 form, Defendant's Exhibit #24, because all of the payments made to him were underpaid under his contract with Acme. Rather, Racca contends that we should enforce the contract, as written, between Racca and Acme to compute Racca's average weekly wage.

4

Acme contends that such a determination by this court as to whether it abided by the contract provisions in paying Racca is not proper given that such enforcement of a contract is outside the subject matter jurisdiction of the workers' compensation courts. Acme correctly points out that La.R.S. 23:1310.3(F) generally governs the subject matter jurisdiction of our workers' compensation courts. It states:

> Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers' compensation insurance coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

La.R.S. 23:1310.0(F).

Racca counters that the interpretation and application of the contract between he and Acme is part of the WCJ's duty in determining his average weekly wage. We agree with Racca. It is clear that the interpretation and application of an employment agreement as to a claimant's pay arises out of the workers' compensation statutes that authorize a WCJ to determine a claimant's average weekly wage.

The contract between Racca and Acme pertaining to driver compensation, Defendant Exhibit #25, states:

Your rate of compensation shall be as follows:

25% Of "Net Transportation Charge" is defined as **Gross Revenues** invoiced by Acme in connection with the operation and/or use of the Leased Equipment for transporting, stopovers, and/or detention of shipments **divided by a factor as stated in the Lease Addendum –**

**Exhibit "A" for the vehicle being driven**. Gross revenues will not include any amounts invoiced by Acme for fuel adjustments or any amounts invoiced by Acme for non-leased equipment, permits, tolls, accessorial charges, collection fees on Collect On Delivery (COD) shipments, extra driver and labor/swamper charges.

The Lease Addendum, Defendant's Exhibit #26, states:

"**NET TRANSPORTATION CHARGE**" is defined as Gross Revenues invoiced by Acme in connection with the operation and/or use of the Leased Equipment for transporting, stopovers, and/or detention of shipments divided by a factor of 1.048. Gross revenues will not include any amounts invoiced by Acme for fuel adjustments or any amounts invoiced by Acme for non-leased equipment, permits, tolls, accessorial charges, collection fees on Collect On Delivery (COD) shipments, extra driver and labor/swamper charges.

Racca argues that the W-2 forms, Defendant's Exhibit #24, should not be used to calculate his average weekly wage because he was underpaid according to the plain language of his contract. For example, Racca's wages for the week ending November 30, 2005, were $795.78. According to Racca, however, if one is to perform the calculations under the plain language of the contract, he should have been paid $1,039.14. He reaches this figure by taking the gross revenues of the truck for that week, $4,356.06, dividing it by 1.048 for a quotient of $4,156.55, and then multiplying $4,156.55 by 25% for a product of $1,039.14.

However, Racca's argument for these calculations disregards the language in the contract, stating, "[g]ross revenues will not include any amounts invoiced by Acme for fuel adjustments or any amounts invoiced by Acme for non-leased equipment, permits, tolls, accessorial charges, collection fees on Collect On Delivery (COD) shipments, extra driver and labor/swamper charges." When looking at Defendant's Exhibit #22, it is clear that Acme based Racca's pay on gross revenues after subtracting those fees indicated in the contract. For example, in the week alluded to by Racca ending on November 30, 2005, the gross revenues of the truck were $4,356.06. After subtracting those fees indicated in the contract,

6

the net amount is $3,183.10. Multiplying $3,183.10 by 25% gives one a product of $795.78, exactly what Racca was paid.

Therefore, given the plain language of the contract, we find that Defendant's Exhibit #24, Racca's W-2 form, is the best source to determine his average weekly wage. Louisiana Revised Statutes 23:1021(12)(d) states that Racca's average weekly wage should be determined by taking "his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week."

Here, according to Racca's W-2 form, his gross earnings from Acme for the relevant period were $5,361.53. According to Defendant's Exhibit #24, Racca worked sixty-nine days prior to the date of the accident, November 19, 2005. Thus, we divide $5,361.53 by sixty-nine to obtain a quotient of $77.70. This number is then multiplied by the average number of days worked by Racca per week. Racca worked for Acme for twenty-one weeks. We next take the number of days worked, sixty-nine, and divide it by twenty-one (21) to determine that Racca worked an average of 3.29 days per week. Finally, when multiplying $7.70 by 3.29 we get Racca's average weekly wage of $255.63.

In summation, we find that the WCJ erred in calculating Racca's average weekly wage. Above, we vacated the WCJ's finding that Racca's average weekly wage was $210.53. After a de novo review of the record, we render judgment finding that Racca's average weekly wage is $255.63.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Racca proposes that the WCJ erred in failing to award penalties for underpayment of indemnity benefits and for termination of benefits. We do not agree.

7

A WCJ has broad discretion in awarding penalties and attorney fees and that determination, in the absence of manifest error, should not be disturbed. *Gradney v. La. Commercial Laundry*, 09-1465 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115. Here, according to our finding in Assignment of Error Number One, Racca's average weekly wage is $255.63. Acme paid Racca based on an average weekly wage of $260.61. Therefore, Acme was overpaying Racca, and it is clearly not subject to a penalty for underpayment of wage benefits.

Additionally, Racca contends that his benefits were terminated improperly. When addressing this issue, the WCJ, in her reasons for ruling, stated, "I do think the evidence supports a finding that [Racca] was able to earn ninety percent or more of his pre-injury wage at the time benefits were terminated. Therefore, I do not assess a penalty or attorney's fee for that termination of benefits."

The WCJ based her findings on a finding that Racca was not credible regarding his ability to work. Deference must be given to a factfinder's credibility determinations "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Wackenhut Corrs. Corp. v. Bradley*, 96-796, p. 4 (La.App. 3 Cir. 12/26/96), 685 So.2d 661, 663 (*quoting Rosell v. ESCO*, 549 So.2d 840 (La.1989)). Here, the WCJ's credibility determination is reasonable. Thus, we will defer to her determination regarding Racca's credibility and find that the WCJ did not commit a manifest error in denying Racca penalties for wrongful termination of benefits.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Next, Racca contends that it was error for the WCJ to find that he violated La.R.S. 23:1208. We find no merit to this contention.

Louisiana Revised Statutes 23:1208 states, in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

This court, in *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473, pp. 5-6 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, 243-44, stated the following:

> The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact[ ] and is, therefore, subject to the manifest error standard of review. *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. However, we must keep in mind that La.R.S. 23:1208(E) is penal in nature. Any statute that is penal in nature must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14; *Olander v. Schillilaegh's*, 04-725 (La.App. 3 Cir. 3/23/05), 899 So.2d 97.
>
> > [Louisiana Revised Statutes] 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.
> >
> > Concerning the standard of appellate review of a forfeiture claim, the court in *Rowan Cos., Inc. v. Powell*, 02-1894, 02-1895, p. 6 (La.App. 1 Cir. 7/2/03), 858 So.2d 676, 680, *writ denied*, 03-2177 (La.11/14/03), 858 So.2d 425 (citations omitted), stated:
> >
> > > The determination of whether there is a false statement or representation willfully made for the purpose of obtaining any benefit or payment involves inherently factual determinations and, thus, this court's review of those findings by the WCJ is governed by

the manifest error standard. Under that standard of review, this court may only reverse the WCJ's decision if we find (1) there is no reasonable factual basis for the finding in the record and (2) the finding is clearly wrong or manifestly erroneous.

*Phillips v. Diocese of Lafayette*, 869 So.2d at 316-17, (quoting in part *Flintroy v. Scott Cummins Salvage*, 36,857, p. 12 (La.App. 2 Cir. 3/10/03), 839 So.2d 1231, 1238, *writ denied*, 03–1068 (La.6/6/03), 845 So.2d 1093 (citations omitted))

In the case before us, the WCJ found that Racca told Dr. David Muldowny that he could not or was not working, when, in fact, he was working. The WCJ also found that Racca told Dr. Muldowny that he was not working for the purpose of continuing to receive benefits.

Racca testified at trial that he knew he told Dr. Muldowny that he was working at his last visit prior to trial. However, he could not remember if he told Dr. Muldowny if he was working before then. In Dr. Muldowny's records, on March 21, 2007, June 20, 2007, August 31, 2007, and October 10, 2007, it states that Racca "presently is not working." Specifically, in Dr. Muldowny's hand written notes from August 31, 2007, and October 10, 2007, he states that Racca is "not working."

It is clear from the record and Racca's own testimony that he was working at the Green Frog Lounge during the dates listed in the paragraph above. It is also clear that Racca was very much aware of how and why he could receive benefits despite a vague recollection of other matters.

Moreover, the record contains the testimony of Ms. Clara Breaux. She testified that Racca would perform tasks at the Green Frog Lounge such as "take the beer from the floor, and he'd put it in the stock room. . . . Then, he would take it from there and put it in the beer box, bend over and put it in the beer box, pick the boxes up, cases of beer." Further, according to Breaux, Racca would work

twelve hours straight and perform heavy lifting while showing no signs of discomfort. Finally, according to Breaux, Racca would comment on his case that he would receive a "big settlement."

Given the status of the record, we find sufficient evidence to uphold the WCJ's decision to terminate Racca's benefits. We cannot say that the WCJ was manifestly erroneous or clearly wrong.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In his fourth assignment of error, Racca avers that the WCJ erred in failing to allow the police report into evidence. We find that any such error would be harmless.

Racca contends that the police report should have been allowed into evidence to impeach Ms. Breaux's testimony. Breaux candidly stated in her testimony that she was angry with Racca because he fired her and did not allow her to attend her family's benefit that was hosted by the Green Frog Lounge. Thus, Racca's purpose for submitting the police report, to show potential bias on Breaux's part, is cumulative to that which was revealed by Breaux in her own testimony. Thus, we find this assignment of error to be without merit.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

Racca's fifth assignment of error raises the issue of whether it was error for the WCJ to limit the attorney fee award to $8,000.00. We find that the WCJ erred in limiting this attorney's fee when she stated, "I award $8,000.00 in attorney's fees for the items for which claimant prevailed, together with cost of court and interest as provided by law."

Our supreme court, in *McCarroll v. Airport Shuttle, Inc.*, 00-1123, pp. 9-10 (La. 11/28/00), 773 So.2d 694, 700 stated:

In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. *Cain* [ *v. Employers Cas. Co.*, 236 La. 1085, 110 So.2d 108 (1959)]. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. H. Alston Johnson, III, [LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE] § 389 [(3rd ed. 1994)]. The amount awarded is intended to provide full recovery, without statutory limitation, for attorney's services and expenses in connection with the litigation. If the attorney were allowed to collect the contractual attorney fees in addition to the full compensation awarded in the statutory attorney fees, the attorney would get double recovery (to the extent of the limited contractual fee) for his services, at the expense of his client.

We therefore conclude that the statutory attorney fees, awarded to the employee in cases of arbitrary behavior of the employer or the insurer, were intended to benefit the employee, who would otherwise have to pay the contractual attorney fees out of his or her benefits recovered in the litigation, and were not intended to provide additional fees to the employee's attorney, who received the amount of the statutory attorney fees as full compensation for legal services in the litigation.

Given our supreme court's directive in *McCarroll*, we find that the WCJ erred in awarding statutory attorney fees solely for the issues where penalties were awarded. However, we do not find that Racca's counsel is entitled to an attorney fee award of the full amount evidenced by the affidavit he submitted. The record contains an affidavit from Racca's counsel wherein he contends to have worked 147 hours at $225.00 per hour for a total of $33,075.00.

Acme does not dispute the amount of time that Racca's counsel claims to have worked toward the case, nor does this court. However, in applying the factors set forth in *McCarroll*, we amend the judgment of the WCJ to increase the attorney fee award from $8,000.00 to $15,000.00.

Further, Racca requests additional attorney's fees for work done on appeal. We deny this request.

Racca is the appellant in this case and is not defending a judgment, but seeking a new judgment. We do not grant him any additional relief on appeal that would have required an award of attorney's fees had the relief been granted at the trial level. Furthermore, as noted in *Nitcher v. Northshore Regional Medical Center*, 11-1761, p. 19 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1014, *writ denied*, 12-1230 (La. 9/21/12), 98 So.3d 342:

> [A]n increase in attorney fees generally should be granted when a party who was awarded attorney fees in the trial court is forced to and successfully defends against an appeal. *Bergeron v. Watkins*, 98-0717 (La.App 1st Cir. 3/2/99), 731 So.2d 399, 405. Conversely, in this case, rather than being forced to defend against an employer's unsuccessful appeal, Nitcher was the party who brought this appeal. Moreover, she has been only partially successful on appeal. Consequently, we do not believe Nitcher is entitled to additional attorney fees.

That being the case, under the facts of this case, we find that Racca is not entitled to an award of attorney fees for work performed on appeal.

## ASSIGNMENT OF ERROR NUMBER SIX:

Racca's sixth assignment of error is that the WCJ erred in finding that he was capable of earning ninety percent of his wages. We find no merit to this assignment of error.

"Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review." *Banks*, 696 So.2d at 556. A claimant is entitled to Supplemental Earnings Benefits (SEB) under La.R.S. 23:1221(3)(a)(i) "[f]or injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury[.]" Our supreme sourt, in *Daigle v. Sherwin-Williams. Co.*, 545 So.2d 1005, 1006-09 (La.1989) (footnotes omitted), stated:

"The threshold prerequisite to the recovery of supplemental earnings benefits, as set forth in subparagraph (3)(a) is that the employee's injury result in his '*inability* to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury.'" *Payne v. Country Pride Foods, Ltd.*, 525 So.2d 106, 109 (La.App. 3d Cir.1988). The injured employee thus bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. . . .

. . . .

Once the plaintiff has met his initial burden of proving entitlement to supplemental earnings benefits by establishing his job-related disability, the amount of such benefits must be calculated. [Louisiana Revised Statutes] 23:1221(3)(a) provides that the benefits are "sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn." The next step in the analysis requires an examination of what the employee is earning or is able to earn. The statute further explains this analysis in [La.R.S. 23:1221](3)(c)(i). The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region.

Racca's argument on this assignment is that the WCJ used language not associated with the proper legal standard, more probable than not, to find that he was not entitled to SEBs when she used the words "possibly" and "reasonable possibility" that he could earn 90% of his pre-injury wage. However, given that Racca had never "met his initial burden of proving entitlement to SEB," it was incumbent upon him to show that he was entitled to SEBs. It is clear that the WCJ found that he failed to carry that burden, and the record before us supports that finding. Moreover, we have already affirmed the WCJ's finding that Racca forfeited his workers' compensation benefits under La.R.S. 23:1208. Thus, this assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER SEVEN:**

In his final assignment of error, Racca asserts that his costs and expenses, along with legal interest on penalties and attorney fees, should have been awarded in the WCJ's judgment. We do not agree.

Courts are given great discretion in the taxing of court costs and may assess those costs in any manner it deems equitable. La.Code Civ.P. art. 1920. The assessment of court costs is reviewed pursuant to an abuse of discretion. *Trahan v. Asphalt Assocs., Inc.*, 01-311 (La.App. 3 Cir. 10/17/01), 800 So.2d 18.

Here, the WCJ found that each of the parties should bear their own costs. Given that Acme was slightly overpaying Racca's indemnity benefits and Racca was found to be in violation of La.R.S. 23:1208, we find no abuse by the WCJ in ruling that each party was to bear their own costs.

## CONCLUSION:

Lester Racca, Sr. raised seven assignments of error. We found credence in two of the seven assignments. First, we found that the WCJ erred in calculating Racca's average weekly wage. After having found the record complete and ripe for adjudication, we rendered judgment finding that Racca's average weekly wage is $255.63 versus $210.53 as found by the WCJ. We also found that the WCJ erred in awarding Racca attorney's fees only for those issues where Acme Truck Lines, Inc. was penalized for failing to follow the workers' compensation statutes. Thus, we increased Racca's attorney's fee award from $8,000.00 to $15,000.00. Additionally, we denied Racca's request for attorney's fees for work done on appeal given he filed this appeal seeking a new judgment and largely failed to do so. Finally, we found no merit to any of the other issues raised by Racca. Each party is to pay its own costs incurred in these proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

15

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-1319

LESTER RACCA

VERSUS

ACME TRUCK LINES, INC.

**SAUNDERS, J., dissents and assigns written reasons.**

The majority opinion, as written, denied Racca's request for additional attorney's fees for work done on appeal. Further, it had each party pay its own costs.

I would both grant Racca's request for attorney's fees for work done on appeal and assess Acme Truck Lines, Inc. with all costs of these proceedings based upon *McCarroll*, 773 So.2d 694. There, our supreme court stated, "[t]he amount awarded [in attorney's fees] is intended to provide *full recovery*, without statutory limitation, for attorney's services and expenses in connection with the *litigation*." *Id*. at 700.

In my view, an award of attorney's fees for work done on appeal and assessment of all costs are necessary to bestow full recovery for services in connection with the litigation. Therefore, I would award Racca attorney's fees for work done on appeal and assess all costs of this proceeding to Acme Truck Lines, Inc. Accordingly, I respectfully dissent.

NUMBER 12-1319

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LESTER RACCA

VERSUS

ACME TRUCK LINES, INC.

AMY, J., concurring in part and dissenting in part.

I respectfully dissent from the majority opinion's determination to increase the award of attorney fees for work performed at the trial level. In my opinion, the workers' compensation judge correctly tailored the attorney fee award to those items on which the penalties were awarded.

Here, the claimant seeks full attorney fees incurred in pursuit of his claim, even those incurred in pursuit of aspects of the claim found to be meritless. In support of this argument, the claimant cites *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694, 700 and its statement that "[t]he amount awarded is intended to provide full recovery, without statutory limitation, for attorney's services and expenses in connection with the litigation." In my opinion, however, the statement relied upon is inapplicable as urged given the starkly differing backgrounds of *McCarroll* and the present matter.

In this case, the claimant seeks attorney fees for aspects of his litigation on which he was unsuccessful. In *McCarroll*, 773 So.2d 694, however, the supreme court addressed whether a claimant's attorney could recover both statutory attorney fees and those arising from the attorney's contract with the claimant. The supreme court denied that recovery as duplicative. It was only within that context that the supreme court remarked upon the "full recovery" due a claimant. Accordingly, I do not rely on *McCarroll* for the general proposition that a claimant's attorney receives litigation expenses related to aspects of the case on which a claimant was

unsuccessful. While the attorney fees awarded in *McCarroll* did, in fact, appear to be for the entirety of the litigation, the *McCarroll* claim involved an employer's full denial of benefits; such a situation is not present in this case.

In this case, the claimant was unsuccessful on a large part of his claim and was awarded only a portion of the penalties sought. Thus, I find that the figure awarded by the workers' compensation judge is reasonable and appropriately tied to those aspects of the award arising under La.R.S. 23:1201. Accordingly, I would affirm that award.

For these reasons, I dissent from the majority's award of additional attorney fees for work performed at the trial level. I concur in the remainder of the majority decision.