# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 15-97

CECILIA RACHAL

VERSUS

WAL-MART CORPORATION

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 09-05255
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**GREMILLION, Judge, concurs in part and dissents in part and assigns written reasons.**

**George Arthur Flournoy**
**Flournoy & Doggett**
**P. O. Box 1270**
**Alexandria, LA 71309-1270**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Cecilia Rachal**

**R. O'Neal Chadwick, Jr.**
**Gregory B. Odom, II**
**Chadwick Law Firm, LLC**
**P. O. Box 12114**
**Alexandria, LA 71315**
**(318) 445-9899**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Wal-Mart Corporation**

**EZELL, Judge.**

Wal-Mart Corporation appeals a judgment of the Office of Workers' Compensation which found it liable to Cecilia Rachal for supplemental earnings benefits in addition to penalties and attorney fees. Additionally, the workers' compensation judge denied Wal-Mart's claim for forfeiture of benefits due to fraud pursuant to La.R.S. 23:1208.

## FACTS

Cecilia Rachal was employed with Sam's Club in Alexandria as an advantage coordinator. An advantage coordinator sets up appointments with different companies to sell Sam's Club memberships. In 2009, the Alexandria Sam's was remodeling its store. During the remodeling, Ms. Rachal was in a small temporary office space with other coworkers. On June 10, 2009, Ms. Rachal was walking between a coworker at her desk and a filing cabinet when she fell. After the fall, Ms. Rachal had pain in her head, neck, back, right hand, and both ankles. She was assisted to a wheelchair. Her ex-husband picked her up at Sam's and took her to St. Frances Cabrini Hospital. Following a check-up in the emergency room, it was recommended that she see Dr. Gordon Webb.

Ms. Rachal saw Dr. Webb on June 12, 2009, who he determined that Ms. Rachal was unable to work. At the next visit on June 19, 2009, Dr. Webb determined that Ms. Rachal was able to return to regular work duty, but Ms. Rachal did not agree. It was at this time she hired an attorney, who filed a disputed claim for compensation on June 25, 2009. Ms. Rachal began receiving temporary total disability benefits on June 26, 2009. Her attorney referred her to Dr. Clark Gunderson, an orthopedic surgeon.

Dr. Gunderson first saw Ms. Rachal on July 1, 2009. She related to him that she was experiencing headaches, neck pain radiating into both shoulders, and lower back pain radiating into both legs. Ms. Rachal also told Dr. Gunderson that she had been having low back pain since she was fifteen years old but had been able to work. Since this accident, she has not been able to work. Dr. Gunderson diagnosed Ms. Rachal with a lumbar-straining-type injury superimposed on degenerative disc disease. A lumbar MRI on August 7, 2009, indicated spinal stenosis. Dr. Gunderson stated that the spinal stenosis was caused by a protrusion of the L3-4 disc and spurring in Ms. Rachal's lower back. Dr. Gunderson recommended a lumbar epidural steroid injection and referred her for physical therapy. Even after conservative treatment, Ms. Rachal continued to have problems, so Dr. Gunderson recommended a lumbar laminectomy from L2-L5 to decompress the nerve roots.

Trial regarding Ms. Rachal's need for surgery was originally set for August 10, 2010. Prior to trial, Wal-Mart authorized the surgery, and surgery was performed on July 26, 2010. Trial on the remaining issues was held on June 3, 2014. The workers' compensation judge (WCJ) issued oral reasons for judgment on August 7, 2014.

The WCJ denied Wal-Mart's claims for forfeiture of benefits due to fraud under La.R.S. 23:1208 and determined that Ms. Rachal was entitled to supplemental earnings benefits (SEBs) at a zero earning capacity. The WCJ further found that the surgery performed by Dr. Gunderson was necessitated by Ms. Rachal's work accident. Additionally, the WCJ awarded Ms. Rachal penalties in the amount of $8,000.00 as the result of Wal-Mart's payment of indemnity benefits at the incorrect rate and its failure to pay medical travel expenses on three different

2

occasions. Wal-Mart was also ordered to pay attorney fees in the amount of $15,000.00. Wal-Mart then filed the present appeal asserting several assignments of error.

## FORFEITURE OF BENEFITS

Wal-Mart first claims that the WCJ erred in failing to find that Ms. Rachal forfeited her right to workers' compensation benefits due to her willful misstatements and misrepresentations over the lifespan of the workers' compensation claim. It claims that her trial and deposition testimony is full of inconsistencies and misstatements.

Louisiana Revised Statutes 23:1208(A) provides that a claimant shall forfeit her workers' compensation benefits when the employer establishes that: (1) there is a false statement or representation; (2) which was willfully made; (3) for the purpose of obtaining or defeating any benefit or payment. "Forfeiture of workers' compensation is a harsh remedy, and statutory forfeiture must be strictly construed. An employer has the burden of proving each element within the statute, and the lack of any one of the elements is fatal to an employer's avoidance of liability." *Our Lady of the Lake Reg. Med. Ctr. v. Mire*, 13-1051, p. 6 (La.App. 1 Cir. 2/18/14), 142 So.3d 52, 56. The determination by the WCJ of whether a worker has willfully made a false statement or representation for the purpose of obtaining benefits is question of fact subject to the manifest error standard of review. *Daniel v. Point to Point Directional Drilling*, 13-1407 (La.App. 3 Cir. 5/7/14), 139 So.3d 613, *writ denied*, 14-1165 (La. 9/19/14), 149 So.3d 245.

Wal-Mart claims that Ms. Rachal was not forthcoming about her previous neck and back issues. In 2004, Ms. Rachal had surgery on her neck. She has never denied this. When asked whether back surgery had been recommended before, she

3

denied that it had. However, in 2004, the doctor who performed the neck surgery had also suggested that she might need back surgery. As explained by Ms. Rachal, the concern at that time was her neck. A review of the testimony in the record indicates that Ms. Rachal never denied that she had back problems prior to the accident at Sam's. She was able to tolerate her back issues and worked several jobs after her neck surgery, without the need for surgery for her back until this accident.

Furthermore, Ms. Rachal was forthcoming about a fall she had at her house in April 2009, shortly before her accident at Sam's in June 2009. She was out of work for approximately one week but was able to return to work.

Wal-Mart also claims that Ms. Rachal's testimony regarding her earnings from a bingo parlor in 2012 after her accident at Sam's was not credible. After Wal-Mart started inquiring, it was revealed that Ms. Rachal had worked at a bingo parlor calling the games on a part-time basis. Her earnings were not reported to Wal-Mart until it asked whether she had any employment and earnings. Ms. Rachal explained that she had called her attorney's bookkeeper asking whether she could work at the bingo parlor. The bookkeeper testified that Ms. Rachal did call inquiring about going to work. The bookkeeper informed Ms. Rachal that it was permissible to work as long as she stayed within her doctor's restrictions. The bookkeeper did not tell her that she had to report her earnings because she thought Ms. Rachal would call back when she actually got the job. The bookkeeper also did not send the report of earnings forms to Ms. Rachal because she did not think Ms. Rachal was working.

While there may be some discrepancies between Ms. Rachal's 2009 deposition and her trial testimony five years later in 2014, we find nothing of

significance that would justify forfeiture of her workers' compensation benefits. We find no manifest error in the WCJ's determination that Wal-Mart failed to establish that Ms. Rachal forfeited her benefits pursuant to La.R.S. 23:1208.

## SUPPLEMENTAL EARNINGS BENEFITS

Wal-Mart contends that the trial court erred in concluding that Ms. Rachal was entitled to SEBs based on a zero earning capacity. Wal-Mart argues that Ms. Rachal had the burden of establishing that she experienced more than a ten percent wage loss and that the wage loss was the result of the accident at work. Wal-Mart claims that Ms. Rachal has reached maximum medical improvement and is able to return to work. It is Wal-Mart's position that Ms. Rachal's ongoing work restrictions are not due to her accident at Sam's but due to her back problems that existed before her accident.

> The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. La. R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i).

*Clay v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 538-39 (case citations omitted).

"Implicit in La. R.S. 23:1221(3)'s requirement that the employee show that a work-related injury resulted in his inability to earn 90% of his pre-injury wages is a showing that the injury, and not some other cause, resulted in his inability to retain

5

his pre-injury job." *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, p. 9 (La. 1/9/11), 56 So.3d 170, 176.

In his testimony, Dr. Gunderson noted that Ms. Rachal's disk herniation at the L3-4 level, a new level that was not present before this accident. Dr. Gunderson observed that she had back pain before the accident but no leg pain, which commenced with this accident. Her complaints were consistent with the MRI. He noted that Ms. Rachal communicated to him that she had low back pain since she was fifteen years old but was able to work. It was only after the incident at Sam's that Ms. Rachal was not been able to work. Dr. Gunderson opined that Ms. Rachal is not capable of working an eight-hour day.

Dr. Stephen Katz, who specializes in pain management, testified that with medication Ms. Rachal is able to function in her daily activity. However, some of the medications would probably affect her ability to function at work, because they would cause her to be drowsy and confused. At the time of trial, Ms. Rachal was still seeing Dr. Katz.

Bruce O'Dell performed a functional capacity evaluation on Ms. Rachal. Mr. O'Dell was of the opinion that Ms. Rachal legitimately attempted the test. The results of the functional capacity evaluation revealed that Ms. Rachal's work level was below sedentary, because she was at a high risk due to a balancing issue when walking.

Ms. Rachal testified that no one from Sam's or Wal-Mart has offered her a job. She also has never met with a vocational consultant.

In response to the evidence offered by Ms. Rachal, Wal-Mart introduced the testimony of two orthopedic surgeons who offered second medical opinions as to the cause of Ms. Rachal's back issues. Dr. Peter Vizzi agreed that Dr.

Gunderson's recommendation of surgery was reasonable but was of the opinion it was necessitated by all of Ms. Rachal's preexisting conditions and not related to her accident. Dr. John Budden also agreed that Ms. Rachal's need for surgery was not necessitated by her accident at Sam's but was due to her history of back symptoms before the accident.

We find no manifest error in the WCJ's conclusion that Ms. Rachal's accident at Sam's was what caused Mr. Rachal's need for back surgery. While surgery had been a possibility before the accident, Ms. Rachal was able to function and perform her duties at work. After the fall, Dr. Gunderson discovered a herniated disk at a new level, L3-4, which started causing pain in her legs. Following surgery, Ms. Rachal is very limited in what activities she can perform, in addition to the fact that full-time work is not possible. The evidence establishes that Ms. Rachal proved she is not able to earn ninety percent of her wages at this time due to her limitations.

Since Ms. Rachal established that she is unable to earn ninety percent of her pre-injury wages, the burden then shifted to Wal-Mart to establish that she is "physically able to perform a certain job and that the job was offered to [her] or was available to [her] in a reasonable geographic location." *Allen v. City of Shreveport*, 618 So.2d 386, 389 (La.1993). Wal-Mart has offered no such evidence. The trial court was correct in finding that Ms. Rachal is entitled to SEBs.

## ADMISSIBILITY OF EVIDENCE

Wal-Mart also alleges that the trial court erred in allowing evidence of three allegedly-unpaid mileage reimbursement requests. Wal-Mart claims that the three letters requesting reimbursment, dated March 14, 2013, March 19, 2013, and June 18, 2013, were first disclosed the morning of trial, at which time it objected to the

introduction of the letters. According to the WCJ's scheduling order, all trial exhibits were to be exchanged between the parties and the WCJ at least ten days prior to trial.

Pursuant to La.R.S. 23:1203(D), an employer is responsible for the payment of mileage expenses incurred by the employee in order to obtain medical services. When an employer fails to pay such mileage reimbursement within sixty days of receiving written notice thereof, it is subject to the imposition of penalties. La.R.S. 23:1201(E) and (F).

Citing *Maricle v. Sunbelt Builders, Inc.*, 05-398 (La.App. 3 Cir. 11/2/05), 916 So.2d 1226, *writ denied*, 05-2506 (La. 3/31/06), 925 So.2d 1261, the WCJ ruled that the letters were admissible. In *Maricle*, the WCJ allowed the introduction of evidence which the defendants claimed went beyond the scope of the pleadings. This court found that the disputed claim for compensation and pretrial statement filed on behalf of the defendants discussed the issue of penalties and attorney fees.

A WCJ is vested with discretion in conducting trials in a manner which he decides is consistent with the fair administration of justice. *Russell v. H & H Metal Contractors, Inc.*, 11-27 (La.App. 3 Cir. 6/1/11), 65 So.3d 806. "When there is a 'reasonable question' regarding the admissibility of evidence, admission of the evidence is favored." *Id.* at 811 (quoting *Lemoine v. Hessmer Nursing Home*, 94-836, p. 11 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 451). "If the reason for seeking the exclusion of the evidence is surprise, the trial court may grant a 'constructive continuance,' so that the party seeking exclusion may avoid prejudice by preparing or obtaining rebuttal evidence." *Id.* A WCJ is not bound by technical rules of evidence. La.R.S. 23:1317.

Pretrial orders are provided for in La.Code Civ.P. art. 1551 which gives the trial court wide discretion to provide for the pretrial order and insuring that it is enforced. *Russell*, 65 So.3d 806. A trial court has wide discretion in determining whether to modify a pretrial order, but this discretion must be exercised to prevent substantial injustice to the parties who rely on it in the preparation and presentation of their cases. *Id.* One of the reasons for pretrial procedure is the avoidance of surprise. *Id.*

In the present case, the disputed claim for compensation does raise the issue of penalties and attorney fees. However, as noted by Wal-Mart, the claim was filed in 2009, years before the issue of nonpayment of mileage reimbursement requests even arose. Ms. Rachal's pretrial statement filed on May 23, 2014, did state that penalties and attorney fees were an issue for trial. Furthermore, her pretrial statement also listed a printout of medical expenses and an expense ledger as an exhibit. Wal-Mart's pretrial statement also stated that the issue of penalties and attorney fees was an issue to be litigated.

At trial the WCJ allowed the testimony of Mary Attenhoffer, the bookkeeper and workers' compensation secretary for Ms. Rachal's attorney, although objected to by Wal-Mart because she was not on the witness list.[1] At this time, the WCJ agreed to leave the record open for fifteen days to allow Wal-Mart time to explore whether the mileage reimbursement requests had not been paid. Ms. Attenhoffer explained that she keeps a ledger of expenses, which was listed on Ms. Rachal's pretrial statement as an exhibit, showing payments made on behalf of a claimant

---

[1] Wal-Mart has not raised the admission of Ms. Attenhoffer's testimony as an error on appeal, but the analysis would be the same if it did.

and payments received on behalf of a claimant. She then identified the three letters requesting mileage reimbursement which had not been paid.

While Wal-Mart was not made aware of the specific instances of nonpayment of mileage reimbursement requests prior to trial, it was given an additional fifteen days to submit any evidence regarding payment. Furthermore, it had the opportunity to cross examine Ms. Attenhoffer regarding the submission and payment of the requests for reimbursement. In the end, Wal-Mart had never reimbursed Ms. Rachal on these three occasions. Given these safeguards, we find no error in the WCJ's admission of the three unpaid mileage reimbursement requests.

## ATTORNEY FEES

In its final assignment of error, Wal-Mart argues that the trial court's award of $15,000.00 in attorney fees is unreasonably high. Wal-Mart argues that the trial of the case only took one day and that Ms. Rachal's counsel received a percentage of her indemnity checks pursuant to La.R.S. 23:1141, which was approved by the trial court at the beginning of this case.

In awarding attorney fees, a WCJ has broad discretion and his determination should not be disturbed in the absence of manifest error. *Racca v. Acme Truck Lines, Inc.*, 12-1319 (La.App. 3 Cir. 6/12/13), 115 So.3d 1222. Furthermore, statutory attorney fees which are awarded to an employee based on the employer's arbitrary behavior are intended for the benefit of the employee, who would otherwise have to pay the contractual attorney fees out of his or her benefits recovered in the litigation. *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694; *Fabacher v. Stine, Inc.*, 13-471 (La.App. 3 Cir. 10/9/13), 124 So.3d 553.

While Ms. Rachal has been receiving compensation payments since her attorney filed the disputed claim form, this case has been ongoing since 2009. Originally, Wal-Mart was not going to pay for Ms. Rachal's back surgery as recommended by Dr. Gunderson, but on the eve of trial on that issue, Wal-Mart decided that it would pay for the surgery. At the present trial several issues were presented including whether Ms. Rachal was entitled to continue receiving benefits based on her fall at Sam's and whether she was entitled to penalties. Furthermore, Ms. Rachal's attorney also defended the claim for discontinuance of benefits based on fraud raised by Wal-Mart. While the trial may have only been one day on these issues, numerous exhibits were gathered and introduced into evidence by Ms. Rachal's attorney on her behalf. Ms. Rachal's attorney was successful on all issues. We find no manifest error in the WCJ's award of $15,000.00 in attorney fees.

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Wal-Mart Corporation.

**AFFIRMED.**

CECILIA RACHAL

VERSUS

WAL-MART CORPORATION

**GREMILLION, Judge, concurs in part and dissents in part.**

I agree with the majority in affirming the WCJ's finding that the surgery performed by Dr. Gunderson was medically necessary and causally-related to the on-the-job accident and the finding that Ms. Rachal is entitled to SEBs at zero earning capacity. I also agree with the majority in affirming the denial of Wal-Mart's demand that Ms. Rachal's benefits be deemed forfeit. And I would affirm the award of attorney fees. There exists in the record a reasonable basis for the WCJ's findings on these issues; thus, there was no manifest error. I disagree with the majority, though, on the penalties that were assessed, as the WCJ's admission of evidence not previously disclosed to Wal-Mart smacks of trial by ambush. I would find that admitting this evidence does constitute an abuse of the WCJ's discretion.

The WCJ erred in allowing evidence of three alleged-unpaid mileage reimbursement requests. Before trial, the three letters requesting reimbursement, dated March 14, 2013, March 19, 2013, and June 18, 2013, were not disclosed to Wal-Mart, in violation of the WCJ's scheduling order, which required that all trial exhibits be exchanged between the parties and the WCJ at least ten days prior to trial.

Pretrial orders are provided for in La.Code Civ.P. art. 1551, subsection B of which provides, in pertinent part, that a pretrial order "*controls* the subsequent course of the action, unless modified at the trial *to prevent manifest injustice*." (Emphasis added). One of the reasons for pretrial procedure is the avoidance of surprise. "Although the trial court is vested with much discretion to amend its pre-trial order, this discretion must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured the preparation and presentation of their cases accordingly." *Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc.*, 00-1930, p. 24 (La. App. 1 Cir. 9/28/01), 809 So. 2d 1040, 1055.

The majority casts aside this fact by noting that in the present case, the disputed claim for compensation does raise the issue of penalties and attorney fees and that Ms. Rachal's pretrial statement filed on May 23, 2014, did state that penalties and attorney fees were an issue for trial. The claim for compensation was filed in 2009, years before the issue of nonpayment of mileage reimbursement requests even arose. Penalties and attorney fees are at issue in virtually every disputed claim for compensation. Nonetheless, it is incumbent upon the employee in such cases to prove her entitlement to them, and not by means that violate the pretrial order. Penalties in workers' compensation cases are punitive, and the party against whom they are sought must be placed on notice of those acts the plaintiff asserts as grounds for imposing them.

The majority concedes that Wal-Mart was not on notice but states, "While Wal-Mart was not made aware of the specific instances of nonpayment of mileage reimbursement requests prior to trial, it was given an additional fifteen days to submit any evidence regarding payment. Furthermore, it had the opportunity to

cross examine Ms. Attenhoffer [a witness not also not listed as being called to testify by Ms. Rachal] regarding the submission and payment of the requests for reimbursement." This deviation from the pretrial order constitutes an abuse of the WCJ's discretion. Granting a party fifteen days when that party employs over two million people, with a sizable number of them probably seeking workers' compensation benefits, strikes me as an unrealistic demand. Furthermore, the question arises as to how Wal-Mart was even to present such evidence in fifteen days. Would the WCJ reconvene court in that time to entertain testimony? Would the WCJ have allowed it to be submitted by affidavit, and, if so, how would he address any objection Ms. Rachal may have interposed? Being allowed the opportunity to cross-examine an undisclosed witness is not an adequate remedy for a defendant surprised by that witness's participation in the case.

I would reverse the penalties for each of the three allegedly-unreimbursed mileage charges.